NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3694
_____

GOVERNMENT OF THE VIRGIN ISLANDS
v.

MAURICE RICHARDSON,
Appellant
_____

On Appeal from the Appellate Division of the
District Court of the Virgin Islands
District Court No. 3-97-cr-00015-004
District Judge: The Honorable Raymond L. Finch
District Judge: The Honorable Legrome D. Davis
Superior Court Judge: The Honorable Patricia D. Steele

Argued December 3, 2012

Before: SMITH, HARDIMAN, and ROTH, *Circuit Judges*

(Filed: February 1, 2013)


Pamela R. Tepper          [ARGUED]
Office of Attorney General of Virgin Islands
Department of Justice
34-38 Kronprindsens Gade, GERS
Complex, 2nd Floor
St. Thomas, VI  00802
        *Counsel for Appellee*

1

Eszart A. Wynter, Sr.     [ARGUED]
27 Estate Whim
P.O. Box 1847
Frederiksted, VI  00841
       *Counsel for Appellant*

_____

OPINION
_____

SMITH, *Circuit Judge.*

In August of 1996, a jury found Maurice Richardson guilty of the March 26, 1994 murder of Officer Steven Hodge. On this direct appeal, he challenges his convictions on constitutional and evidentiary grounds. We will affirm.

I

Officer Hodge's murder took place shortly after 11:00 pm on March 26, 1994. He was shot fourteen times by at least two people using four different guns. Police found only one piece of physical evidence at the scene, a towel with gun residue. It was found near a bush close to Officer Hodge's home and appeared to have been recently placed there.

Richardson confessed to Athnell Coker that he was involved in the murder. Richardson's confession included an explanation of how the murder took place: it was an ambush, he had hidden behind some bushes, and he had shot Officer Hodge while he was lying on the ground. Additionally, Richardson gave Coker a sawed-

2

off shotgun with duct tape on the handle that he and Coker buried together in Coker's backyard. Coker later gave this shotgun to persons sent by Richardson.

Besides Coker's testimony recounting Richardson's confession, the other testimony revealed that the murder was the product of a conspiracy among Richardson and his codefendants. On the day of the murder, Gwentin Sellwood saw three of Richardson's codefendants—Gent Mosby, Carl Fleming, and Ricky Vanterpool—at a store Mosby ran called New York's Latest Fashions. Sellwood testified at trial that he saw them there and that he saw Mosby remove three guns from a paper bag, two of which he handed to Fleming and Vanterpool. Sellwood also saw a long gun with a damaged handle on the counter behind Mosby. On the back of a chair near Mosby, he saw a towel similar to the one found near the crime scene. Finally, Sellwood also heard Mosby tell his codefendants that he would pick them up at 11:30 pm so that they could take care of "serious business."

Witnesses Bernice Celestine, Eustace Sorhaindo, and Shorn Pennyfeather all heard gun shots the evening of the murder and saw four men dressed in black near Officer Hodge's home shortly before or after his murder. Only Sorhaindo was able to identify at trial any of the four men he saw. He identified Mosby and another codefendant, Pedro Harris. He later recanted his identification of Harris, but he never withdrew his identification of Mosby.

Two days after the murder, Sellwood again encountered Mosby. This time, Mosby had just been questioned by police about the murder of a police officer. Sellwood helped Mosby clean out New York's Latest Fashions store and heard Mosby exclaim several times that he would not go to jail. Several months later, Sellwood encountered Mosby, Fleming, and Vanterpool. Mosby pointedly stopped Sellwood on the street to tell him that "whatsoever you hear in the store or whatsoever you see in the store, don't ever leave me hear it or otherwise me and the boys them will take you out."

Richardson offered two defenses at trial. First, he tried to provide an alibi for the evening of the murder by explaining that he was at strip clubs. Second, he claimed that the murder was committed by corrupt Virgin Islands police officers who knew that Officer Hodge was about to report them. In support of this second defense, Richardson offered a recording in which a person involved in the drug business allegedly explained to a confidential informant ("CI") that Virgin Islands police officers had approached him to hire a contract killer to murder Officer Hodge. The person in the recording was allegedly Vargas Paniagua, who purportedly assisted in the murder because Officer Hodge owed Paniagua cocaine money. Despite Richardson's attempts, Paniagua was not produced to testify at trial, the recording was not admitted into evidence, and the CI's identity was not revealed.

On August 19, 1996, in the Virgin Islands Superior Court,[1] a jury found Richardson guilty of first degree murder, conspiracy to commit murder, and unauthorized possession of a firearm. On November 16, 1996, the Superior Court denied Richardson's motion for a judgment of acquittal or, in the alternative, a new trial. He then filed a timely appeal to the Appellate Division of the Virgin Islands District Court. *Richardson v. Gov't of Virgin Islands*, No. 1997-0015-2, 2011 WL 4357329, at *2 (D.V.I. Sept. 16, 2011) (per curiam). After an unexplained fifteen-year delay, the Appellate Division affirmed Richardson's conviction on January 22, 2010. *Richardson*, 2011 WL 4357329, at *12. Richardson timely appealed to this Court.

The Appellate Division had jurisdiction to hear Richardson's appeal pursuant to 48 U.S.C. § 1613a(a) and (d). We review the Superior Court's rulings using the same standards of review as those employed by the Appellate Division. *Semper v. Santos*, 845 F.2d 1233, 1236 (3d Cir. 1988); *Gov't of Virgin Islands v. Lewis*, 620 F.3d 359, 364 & n.4 (3d Cir. 2010).

II

Richardson challenges his conviction on six grounds. Three arguments relate to the Paniagua tape recording. Richardson argues that the Superior Court violated

---

[1] At the time of trial, the trial court was known as the Territorial Court. Starting in October 2004, the Territorial Court became known as the Superior Court. We will refer to the trial court as the Superior Court.

his Sixth Amendment right to compulsory process when it denied his motion for a writ of habeas corpus ad testificandum requiring Paniagua to testify, that the Superior Court erred by determining that the tape was inadmissible hearsay, and that the Superior Court incorrectly denied his motion to disclose the identity of the CI who recorded the conversation. These arguments are meritless for the same reasons articulated in the related case of *Gov't of Virgin Islands v. Mosby*, No. 11-3676, slip op. at 6–10 (3d Cir. Jan. 30, 2013).

Besides the Paniagua-related arguments, Richardson makes three additional arguments. First, he argues that Athnell Coker's testimony recounting Richardson's confession violated the rule of *Bruton v. United States*, 391 U.S. 123 (1968). Richardson lacks standing to make this argument. "The rule enunciated in *Bruton* stems from the right to confrontation and is designed to protect the nontestifying confessor's codefendant, not the confessor himself." *United States v. Morales*, 477 F.2d 1309, 1316 (5th Cir. 1973). Thus, even if Coker's testimony violated *Bruton*, it did not violate Richardson's right to confrontation.

Richardson also challenges the District Court's admission of Coker's testimony on the grounds that it was inadequately corroborated. This argument was not contemporaneously raised at trial, so we review for plain error only. *United States v. Richards*, 241 F.3d 335, 337 (3d Cir. 2001). Confessions and admissions of "essential elements of the crime" charged "must be corroborated." *Opper v.*

6

*United States*, 348 U.S. 84, 90–91 (1954). A confession is corroborated if other evidence verifies enough of the confession "to justify a jury inference of [the statement's] truth." *Id*. at 93; *United States v. Wilson*, 436 F.2d 122, 124 (3d Cir. 1971) (holding that a confession was trustworthy because "two parts of [the defendant's] admission were corroborated by other evidence").

Richardson's confession is reliable because the details of the murder he described were verified by physical and forensic evidence. Coker testified that Richardson told him that Richardson carried out the murder by going "down Lindberg Bay in the bushes and stake out and waited until Hodge came out of his house and shoot him." Another witness, Bernice Celestine, testified at trial that she saw someone place an object in a grassy area near some bushes by Hodge's house, which police later discovered was a clean, recently placed towel that had gun residue. It looked similar to the towel Sellwood saw with Richardson's codefendants earlier on the day of the murder.

Coker also testified that Richardson shot Hodge "[w]hen [he] fall on the ground, [Richardson] went over him and shoot him with the shotgun." Forensic evidence confirmed that Officer Hodge received one of the shotgun wounds in his back while he was lying face down. The details of Richardson's confession to Coker are thus corroborated by other evidence, which means the Superior Court did not err by permitting the testimony.

7

Lastly, Richardson challenges the sufficiency of the evidence supporting each of his convictions. "The burden on a defendant who raises a challenge to the sufficiency of the evidence is extremely high." *United States v. Piekarsky*, 687 F.3d 134, 146 (3d Cir. 2012) (citations omitted). Reviewing the evidence in "the light most favorable to the Government," *id.*, we will affirm the conviction "if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Brown*, 3 F.3d 673, 680 (3d Cir. 1993) (quoting *United States v. Frorup*, 963 F.2d 41, 42 (3d Cir. 1992)) (internal quotation mark omitted).

Coker's testimony is sufficient to support Richardson's convictions for first degree murder and unauthorized possession of a firearm. A defendant can be convicted of first degree murder for murdering the victim by "lying in wait . . . or by any other willful, deliberate and premeditated killing." 14 V.I. Code § 922(a)(1). Richardson told Coker that he participated in the murder of Officer Hodge by waiting "in the bushes and stake out and waited until Hodge came out of his house." A person can be convicted of unauthorized possession of a firearm if the Government shows that the person is not authorized to have a firearm and that the person possessed a firearm. 14 V.I. Code § 2253(a). Richardson concedes that he was not authorized to possess a firearm, and the possession element is satisfied

by Coker's testimony that Richardson gave him the sawed-off shotgun that they buried together.

Regarding Richardson's conspiracy conviction, "[t]o prove a conspiracy, the government must establish a unity of purpose between the alleged conspirators, an intent to achieve a common goal, and an agreement to work together toward that goal." *United States v. Gibbs*, 190 F.3d 188, 197 (3d Cir. 1999) (citation omitted). These three elements can be proved "entirely by circumstantial evidence." *Id*. (citation omitted). There are three pieces of circumstantial evidence that adequately support Richardson's conspiracy conviction. First, four guns were used by more than one person. Second, witnesses testified that they saw four men dressed in black arrive together in a truck near Officer Hodge's home close to the time of the murder. Third, three of Richardson's codefendants were seen earlier on the day of the murder distributing guns similar to those used in the murder while discussing "a serious job to do" later that same evening. This evidence shows that the murder was the product of multiple people who shared the common goal of murdering Officer Hodge.

Even though this evidence lacks a direct connection between Richardson and his codefendants, a reasonable juror could infer that he was a part of the conspiracy. "Once the existence of a conspiracy is clearly established, slight evidence may be sufficient to connect a defendant with it." *United States v.*

9

*De Calvalcante*, 440 F.2d 1264, 1273 (3d Cir. 1971) (quoting *United States v. Cohen*, 197 F.2d 26, 29 (3d Cir. 1954)). Here, the testimony showing Richardson's codefendants together and acting as if they had an agreement to kill Hodge is sufficient for a jury to conclude that a conspiracy existed. This makes Richardson's confession to the murder sufficient to show that he was also a part of that conspiracy. The contrary conclusion—that he happened to show up to kill Officer Hodge at the same time and place as three other people—is preposterous. The evidence was thus sufficient to support his conspiracy conviction as well as his murder and firearm possession convictions.

## III

For these reasons, we will affirm Richardson's convictions.